UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Scott A. Kroll,

           Plaintiff,

  vs.                         REPORT AND RECOMMENDATION

St. Cloud Hospital,

           Defendant.          Civ. No. 05-915 (JRT/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Defendant St. Cloud Hospital to Dismiss the Plaintiff's Complaint, and upon the informal Motion of the Plaintiff to Appoint Counsel.[1]  A Hearing on the Motions was conducted on July 28, 2005, at

---

[1] While the dismissal of the Plaintiff's Complaint would necessarily render the Plaintiff's informal Motion to Appoint Counsel moot, we have construed the Plaintiff's Motion to Appoint Counsel as requesting assistance in defending against the Defendant's pending Motion to Dismiss.  Accordingly, we find it proper to determine the Plaintiff's entitlement to Court appointed counsel, prior to addressing the Defendant's Motion to Dismiss.  We conclude, however, that the appointment of counsel, under the circumstances presented in this case, would be improper.

which time, the Plaintiff appeared on his own behalf, and the Defendant appeared by Tad S. Pethybridge, Esq.   For reasons which follow, we recommend that the Plaintiff's Motion to Appoint Counsel be denied, that the Defendant's Motion to Dismiss be granted, and that the Plaintiff's Complaint be dismissed.

## II. Factual and Procedural History

The Plaintiff commenced this action on April 13, 2005, in Minnesota State Court, under the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and, if liberally construed, the Minnesota Human Rights Act ("MHRA"), alleging that the Defendant discriminated against him by denying him benefits under the Defendant's Disability Retirement Plan ("Plan").   After successfully moving to change venue, the Defendant removed this case to Federal Court, and has now filed a Motion to Dismiss the Plaintiff's Complaint.   The Defendant's Motion is premised on its assertion that the Plaintiff has failed to state a claim under the ADEA, that he has failed to exhaust his administrative remedies under the ADA, and that any claim under the MHRA is barred by the statute of limitations.

Accepting all of the allegations in the Complaint as true, the Plaintiff became permanently disabled on April 12, 2000.   Complaint, p. 9, at ¶6, Notice of Removal, at Exh. A, Docket No. 1; Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir.

- 2 -

2005)("When ruling on a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party."), citing <u>Young v. City of St. Charles</u>, 244 F.3d 623, 627 (8th Cir. 2001).  As of that date, the Plaintiff had reached the age of forty (40), and had completed 11.8 years of service as an employee of the Defendant.  <u>Id.</u>, p. 7, at ¶2.  The Plaintiff subsequently applied for disability pension benefits under the Plan maintained by the Defendant, but, because the Plan was limited to employees who had reached the age of forty-five (45), and who had at least ten (10) years of service with the Defendant, the Plaintiff was determined to be ineligible to receive such benefits, as he had not yet attained the age of forty-five (45) as of the onset of his disability.  <u>Id.</u>, p. 7, at ¶1; see, <u>Affidavit of Tad Pethybridge ("Pethybridge Aff.")</u>, at Exh. 1.

On June 28, 2004, the Plaintiff filed a Charge of discrimination with the Minnesota Department of Human Rights ("MDHR"), which was then cross filed with the Equal Employment Opportunity Commission ("EEOC"), on July 8, 2004.  <u>Complaint</u>, at p. 2.   The Charge alleged that the Defendant had denied him disability retirement benefits because he had become disabled prior to his forty-fifth birthday.  <u>Pethybridge Aff.</u>, at Exh. 1.  The Charge further alleged as follows:

> I believe my age is a factor in Respondent's actions. I was denied disability retirement benefits because of my age. I therefore allege that the above-named Respondent has discriminated against me in the area of employment because of my age in violation of Minnesota Statutes, Section 363A.08, Subd. 2(c) and Subd. 7.

Id.

The Defendant subsequently filed a Position Statement and, in September of 2004, the Plaintiff filed his Rebuttal Statement. Complaint, at pp. 3-4. The MDHR dismissed the Charge on or about October 18, 2004, and on cross-review, the EEOC dismissed the Charge in January of 2005. Complaint, at pp. 4-5. On January 13, 2005, the EEOC provided the Plaintiff with a right-to-sue letter for the ADEA claims. Complaint, at p. 5.

## III. Discussion

A.    The Plaintiff's Informal Motion to Appoint Counsel.

The Plaintiff's request for Court-appointed counsel is predicated on his assertion that he has been unable to obtain legal representation in this matter, due to a lack of funds, the complexity of the case, and his "mental status and the undesirable history leading to my current mental and physical health status." Plaintiff's Memorandum of Law in Opposition to the Defendant's Motion to Dismiss, at p. 6. In support of this assertion, the Plaintiff has submitted for our review a number of

- 4 -

medical reports which discuss his medical condition.  See <u>Affidavit of Scott Kroll</u>, at Exh. F.

In considering such a Motion, it is well-established that this Court has no authority to compel legal counsel to assume the representation of the Plaintiff, but merely has the discretionary authority to request an attorney to assume such representation.  See, <u>Mallard v. United States District Court for the Southern District of Iowa</u>, 490 U.S. 296 (1989); <u>Scott v. Tyson Foods, Inc.</u>, 943 F.2d 17 (8th Cir. 1991).  Central to the exercise of such discretion is a determination by the Court "that the Plaintiff as well as the court will benefit from the assistance of counsel." <u>Nelson v. Redfield Lithograph Printing</u>, 728 F.2d 1003, 1005 (8th Cir. 1984); see also, <u>Plummer v. Grimes</u>, 87 F.3d 1032, 1033 (8th Cir. 1996)("A district court is to decide whether the plaintiff and the court will substantially benefit from the appointment of counsel * * *.").

In exercising its discretionary authority, the Court must carefully weigh the factual and legal complexities of the case, the capability of the Plaintiff to investigate the facts and to present his claims, and the existence of conflicting evidence.  See, <u>McCall v. Benson</u>, 114 F.3d 754, 756 (8th Cir. 1997); <u>Davis v. Scott</u>, 94 F.3d 444, 447 (8th Cir. 1996); <u>Plummer v. Grimes</u>, supra; <u>Swope v. Cameron</u>, 73 F.3d 850, 852 (8th

Cir. 1996); <u>Edgington v. Missouri Department of Corrections</u>, 52 F.3d 777, 780 (8th

Cir. 1995); <u>Nachtigall v. Class</u>, 48 F.3d 1076, 1081-82 (8th Cir. 1995).

After reviewing the relevant factors, we find the issues presented in this action

to be uncomplicated both in their legal and factual components.[2]   Undoubtedly, the

Plaintiff's lack of legal knowledge has presented some disadvantages, in terms of the

requisite time and effort that has been attendant to the presentation of his claim,

however, upon our review of the submissions, which he has filed with the Court thus

far, we are satisfied that he possesses the capacity to develop and articulate the

grievances which are presented by his Complaint.   Accordingly, we recommend that

the Plaintiff's Motion to Appoint Counsel be denied.

---

[2]The Plaintiff relies heavily on the certification, by the MDHR, that his Administrative Charge is "complex," pursuant to Minnesota Statutes Section 363A.29, Subdivision 2.   However, under Section 363A.29, a Charge can be certified as "complex" for a number of reasons, and such a certification is not controlling on our analysis. Rather, our review of the Plaintiff's Complaint discloses that the Plaintiff has alleged straightforward discrimination claims, based on a single allegedly discriminatory act -- the decision by the Defendant to deny him disability benefits, under that applicable Plan.   Accordingly, the asserted complexities of the Plaintiff's case do weigh in favor of an appointment of counsel.

B.    <u>The Defendant's Motion to Dismiss</u>.

1.    <u>Standard of Review</u>.   In reviewing a Complaint under Rule 12(b)(6), Federal Rules of Civil Procedure, we consider all of the facts alleged in the Complaint as true, and construe the pleadings in a light most favorable to the Plaintiff, as the nonmoving party.   See, e.g., <u>Brotherhood of Maintenance of Way Employees v. Burlington Northern Santa Fe Railroad</u>, 270 F.3d 637, 6388 (8th Cir. 2001).   In addition, in assessing a Rule 12(b)(6) Motion, a Court must liberally construe a <u>pro</u> <u>se</u> Complaint.   See, <u>Coleman v. Watt</u>, 40 F.3d 255, 258 (8th Cir. 1994).   "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief."   <u>Young v. City of St. Charles</u>, supra at 627, citing <u>Breedlove v. Earthgrains Baking</u>, 140 F.3d 797, 799 (8th Cir. 1998); <u>Helleloid v. Independent School Dist. No. 361</u>, 149 F. Supp.2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity."   <u>Young v. City of St. Charles</u>, supra at 627, citing <u>Neitzke v. Williams</u>, 490 U.S. 319, 326-27 (1989).   "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law

and not merely legal conclusions." Id., citing Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998).

A Motion to Dismiss can be converted to a Rule 56 Motion for Summary Judgment if "matters outside the pleadings are presented to and not excluded by the court." Rule 12(b), Federal Rules of Civil Procedure. However, a Court may consider some information not contained within the Complaint, such as materials that are part of the public record, and materials that are necessarily embraced by the pleadings, without transforming the Motion into one for Summary Judgment. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); see, Enervations, Inc. v. Minnesota Mining and Manufacturing Co., 380 F.3d 1066, 1069 (8th Cir. 2004); Stahl v. United States Department of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003). Since our decision rests entirely upon the pleadings, materials within the public record, and materials that are necessarily embraced by the pleadings, we analyze each of the Defendants' Motions, under the framework of Rule 12(b)(6), rather than under the regimen of Rule 56.[3]

---

[3]Here, the Defendant has attached, to its Motion to Dismiss, the administrative Charge that was filed by the Plaintiff with the MHRA, and which was then cross-filed with the EEOC. See, Affidavit of Tad Pethybridge, at Exh. 1. While we have considered the information contained in that Charge, we are satisfied, based on the

2..   <u>Legal Analysis</u>.   As noted, the Plaintiff's Complaint, liberally construed,

alleges violations of the ADEA, ADA, and MHRA.   Since they involve somewhat

different considerations, we address each claim, in turn.

a.   <u>The ADEA</u>.   As we construe it, the Plaintiff's Complaint alleges

that the Defendant discriminated against him by not providing him disability retirement

benefits that an employee, who had reached the age of forty-five (45), would have

been eligible to receive.  See, <u>Complaint</u>, pp. 7-8, at ¶¶1-3; see also, <u>Pethybridge Aff.</u>,

at Exh. 1.   To support that contention, the Plaintiff relies on the language of the ADEA,

which provides that "[t]he prohibitions in this chapter shall be limited to individuals

---

references to the administrative Charge contained in the Plaintiff's Complaint, that the
Charge is necessarily embraced by the Plaintiff's pleading.  See, <u>Enervations, Inc. v.
Minnesota Mining and Manufacturing Co.</u>, 380 F.3d 1066, 1069 (8th Cir.
2004)("[D]ocuments 'necessarily embraced by the complaint' are not matters outside
the pleading.").

Accordingly, our consideration of the Plaintiff's administrative Charge does not
convert the Defendant's Motion into one for Summary Judgment.  See, <u>Granier v.
Pace, Local No. 1188</u>, 201 F. Supp.2d 172, 177-178 (D. Me. 2002)(considering
administrative Charge filed with the Maine Human Rights Commission, as well as a
right to sue letter, on a Motion to Dismiss); <u>Bostic v. AT &T of Virgin Islands</u>, 166
F. Supp.2d 350, 355 (D. V.I. 2001)(concluding that the Court could properly consider
a plaintiff's EEOC Charge, "at least for the limited purposes of determining the date
filed and the violations alleged, without converting [the defendant's] Motion to Dismiss
into a Rule 56 Motion."); <u>Fugarino v. University Services</u>, 123 F. Supp.2d 838, 841
n. 1 (E.D. Pa. 2001)(same).

who are at least forty years of age," see, <u>Title 28 U.S.C. §631(a)</u>, and "no such employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title, because of the age of such individual." <u>Title 29 U.S.C. §623(f)(2)(B)</u>. The Plaintiff also notes that Title 29 U.S.C. §1053(a)(2) provides that "[n]o pension plan may exclude from participation (on the basis of age) employees who have obtained a specific age." Based on these provisions, the Plaintiff maintains that the Defendant could not lawfully exclude employees with ten (10) years of service, but with ages from forty (40) to forty-four (44), from receiving benefits under its Plan.[4]

The Supreme Court recently addressed an argument, which is similar to that advanced by the Plaintiff, in <u>General Dynamics Land Systems, Inc. v. Cline</u>, 540 U.S. 581 (2004). In <u>General Dynamics</u>, employees between the ages of forty (40) and forty-nine (49) brought suit against their employer, under the ADEA, based upon the employer's decision to discontinue health insurance benefits for all employees under the age of fifty. The Court held that the employer did not violate the ADEA, since the

---

[4]The Plaintiff has cited to a number of other statutory provisions, which do not appear to bear, at all, on his claim. Notably, Title 29 U.S.C. §1002 (33)(C)(v)(II) applies exclusively to church organizations, and Title 29 U.S.C. §§12102 and 12112, do not appear in the United States Code.

ADEA does not prohibit protections in favor of older workers over younger workers.

In so holding, the Supreme Court observed as follows:

> The common ground in this case is the generalization that the ADEA's prohibition covers "discriminat[ion] * * * because of [an] individual's age," 29 U.S.C. §623(a)(1) that helps the younger by hurting the older. In the abstract, the phrase is open to an argument for a broader construction, since reference to "age" carries no express modifier and the word could be read to look two ways. This more expansive possible understanding does not, however, square with the natural reading of the whole provision prohibiting discrimination, and in fact Congress's interpretive clues speak almost unanimously to an understanding of discrimination as directed against workers who are older than the ones getting treated better.

Id. at 587.

The Court then analyzed the "interpretive clues," including the pertinent legislative history of the ADEA, and noted that, "except on one point, all the findings and statements of objectives are either cast in terms of the effects of age as intensifying over time or are couched in terms that refer to 'older' workers, explicitly or implicitly relative to 'younger' ones." Id. at 590.

The Court proceeded to make the following observation:

> This same idiomatic sense of the statutory phrase is confirmed by the statute's restriction of the protected class to those 40 and above. If Congress had been worrying about protecting the younger against the older, it would not

likely have ignored everyone under 40. The youthful deficiencies of inexperience and unsteadiness invite stereotypical and discriminatory thinking about those a lot younger than 40, and prejudice suffered by a 40-year-old is not typically owing to youth as 40-year-olds sadly tend to find out. * * * Thus, the 40-year threshold makes sense as identifying a class requiring protection against preference for their juniors, not as defining a class that might be threatened by favoritism toward seniors.

Id. at 591.

As a result, the Court concluded that "the text, structure, purpose, and history of the ADEA, along with its relationship to other federal statutes, * * * show[] that the statute does not mean to stop an employer from favoring an older employee over a younger one." Id. at 600; see also, Hamilton v. Caterpillar Inc., 966 F.2d 1226, 1228 (7th Cir. 1992); Parker v. Wakelin, 882 F. Supp. 1131, 1140-41 (D. Me. 1995); Lawrence v. Town of Irondequoit, 246 F. Supp.2d 150, 162 (W.D. N.Y. 2002).

While the Plaintiff's circumstance is somewhat different from that presented in General Dynamics -- since the Plaintiff has alleged discrimination in the allocation of disability pension benefits, as opposed to health care benefits -- we are satisfied, nonetheless, that the Court's holding controls our analysis. Specifically, we find that, under General Dynamics, the statutory language, that is relied upon by the Plaintiff, cannot be construed to create a cause of action, under the ADEA, for the denial of

disability pension benefits to individuals who are over the age of forty (40), but who have not yet reached th age of eligibility under the an employer's disability benefits plan.

Such an interpretation is further compelled by the language contained in Title 29 U.S.C. §623(l)(1)(A), which provides that a violation of the ADEA does not lie "solely because * * * an employee pension benefit plan (as defined in section 1002(2) of this title) provides for the attainment of a minimum age as a condition of eligibility for normal early retirement benefits."  See, e.g, Stone v. Traveler's Corp., 58 F.3d 434, 437 (9th Cir. 1995)(ADEA action for failure of employer to provide specific severance benefits under a pension plan that limited eligibility for such benefits to persons who are age fifty-five (55) or older was precluded by Title 29 U.S.C. §623(l)(1)(A).).  While the Plaintiff argues that Section 623(l)(1)(A) does not apply because the Plan is not an employee pension benefits plan, such an argument is misguided, since it is undisputed that the  Defendant's Plan provides retirement income to its employees.  See Title 29 U.S.C. §1002(2)(A)(i) (defining "employee pension benefit plan" as, "any plan, fund, or program * * * which is maintained by an employer or by an employee organization, or both * * * [that] * * * provides retirement income to employees.").  Therefore, we

find that, according to the language of the ADEA, as it has been interpreted by the United States Supreme Court, the Plaintiff has failed to state a claim under the ADEA.

        b.    <u>The ADA</u>. The only language in the Complaint which specifically references the ADA is the allegation that Titles I and V of the ADA require hospital employers to administer benefits plans according to the law of the State. <u>Complaint</u>, p. 8, at ¶4. The Defendant urges that, to the extent that this allegation can be read to raise a claim under the ADA, the claim must be dismissed because the Plaintiff has not exhausted his administrative remedies. The Plaintiff does not specifically address the Defendant's contention, except to make the conclusory assertion that all of his claims have been fully exhausted.

    "In order to pursue a claim of discrimination under the ADA, a plaintiff must exhaust his administrative remedies." <u>McKenzie v. Lunds, Inc.</u>, 63 F. Supp.2d 986, 1000 (D. Minn. 1999), citing <u>Hayes v. Blue Cross Blue Shield of Minnesota, Inc.</u>, 21 F. Supp.2d 960, 969 (D. Minn. 1998); <u>Tschida v. Ramsey County</u>, 927 F. Supp. 337, 340 (D. Minn. 1996); see, <u>Randolph v. Rogers</u>, 253 F.32 342, 347 n. 8 (8th Cir. 2001); <u>Warwas v. Jos A. Bank Clothiers, Inc.</u>, 2001 WL 586725, at *2 (D. Minn. May 29, 2001)("Under the ADA, an administrative charge is a prerequisite for bringing a lawsuit."). Moreover, in satisfying the exhaustion requirement, a litigant will be limited

to only those claims that fall within the scope of those raised in an EEOC charge. Kells v. Sinclair Buick GMC Truck, Inc., 210 F.3d 827, 836 (8ᵗʰ Cir. 2000) ("Allegations outside the scope of the EEOC charge * * * circumscribe the EEOC's investigatory and conciliatory role, and for that reason are not allowed."); see, Wallin v. Minnesota Dept. of Corrections, 153 F.3d 681, 688 (8ᵗʰ Cir. 1998), quoting Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8ᵗʰ Cir. 1994); Wentz v. Maryland Cas. Co., 869 F.2d 1153, 1154 (8ᵗʰ Cir. 1989)(Claim will not be considered unless it "grew out of the discrimination charge he filed with the EEOC").

In addressing exhaustion principles in the context of an ADEA claim,[5] our Court of Appeals recently provided as follows:

> The reason for requiring the pursuit of administrative remedies first is to provide the EEOC with an initial opportunity to investigate allegations of employment discrimination and to work with the parties toward voluntary compliance and conciliation. See, e.g., Shannon v. Ford Motor Co., 72 F.3d 678, 684 (8ᵗʰ Cir. 1996) (discussing exhaustion requirement under Title VII). "The proper

_____

[5]Since both the ADEA and the Title I ADA exhaustion requirements, as is applicable here, arise out of the same Title VII framework, the principles announced in Parisi v. Boeing Co., 400 F.3d 583, 585 (8ᵗʰ Cir. 2005), apply with equal force to claims the Plaintiff's ADA claim. See, Randolph v. Rodgers, 253 F.3d 342, 347 n. 8 (8ᵗʰ Cir. 2001)("Title VII of the Civil Rights Act of 1964 and Title I of the ADA both require exhaustion of administrative remedies, and Title II of the ADA does not.").

exhaustion of administrative remedies gives the plaintiff a green light to bring [his or] her employment-discrimination claim, along with allegations that are 'like or reasonably related' to that claim, in federal court." Id.  Although we have often stated that we will liberally construe an administrative charge for exhaustion of remedies purposes, we also recognize that "there is a difference between liberally reading a claim which lacks specificity, and inventing, ex nihilo, a claim which simply was not made." Id. (internal quotation marks and citation omitted).  The claims of employment discrimination in the complaint may be as broad as the scope of the EEOC investigation which reasonably could be expected to result from the administrative charge.  See, e.g., Kells v. Sinclair Buick-GMC Truck, Inc., 210 F.3d 827, 836 (8th Cir. 2000).

Parisi v. Boeing Co., 400 F.3d 583, 585 (8th Cir. 2005); see, Stuart v. General Motors Corp., 217 F.3d 621, 630-31 (8th Cir. 2000).

Accordingly, claims that are raised in a lawsuit, but which fall outside of the scope of an administrative Charge, are subject to dismissal.  See, e.g., Williams v. Little Rock Mun. Water Works, supra at 223.

The Charge, which the Plaintiff filed with the MDHR, and which was cross filed with the EEOC, makes no mention of the ADA, nor does it contain any allegations which could, reasonably, be construed as alleging discrimination based on an actual or perceived disability.  See, Pethybridge Aff., at Exh. 1.  Rather, the Charge specifically alleges the Plaintiff's belief that he was "denied disability retirement benefits because of [his] age," and that the Defendant "discriminated against [him] in

the area of employment on the basis of age * * *." Id.[6] Since there is nothing in the

Plaintiff's administrative Charge that would have provided notice to the MHRA, or the

EEOC, of a claim for disability discrimination, we find that the Plaintiff's ADA claim

does not fall within the scope of his administrative Charge. See, Sallis v. University

of Minnesota, 322 F. Supp.2d 999, 1004 n. 1 (D. Minn. 2004)(dismissing ADEA claim

---

[6]The Plaintiff has provided the Court with a Charge, that he had filed with the Minnesota Department of Human Rights, against the Defendant, for alleged violations of the ADA in April of 2001. See, Affidavit of Scott A. Kroll, at Exh D. The Charge asserted that he was involuntary placed on medical leave by the Defendant in April of 2000, and that he subsequently obtained a physician's release which allowed him to return to work without physical restrictions, and "as tolerated." The Plaintiff charged that, rather than allow him to return to work, the Defendant required him to undergo a psychiatric evaluation and, based on the conclusions drawn from that evaluation, the Defendant placed him on medical leave without pay. The Plaintiff alleged that such conduct constituted disability discrimination. Both the MDHR, and the EEOC, dismissed those charges, and the EEOC provided the Plaintiff with a right-to-sue letter in July of 2001, which informed the Plaintiff that he had ninety (90) days, in which to bring a suit on the charges that had been reviewed and dismissed.

While we are uncertain as to how this Charge bears on the allegations contained in the Plaintiff's present Complaint, it plainly cannot be used to satisfy the Plaintiff's ADA exhaustion requirements. Aside from the fact that such a claim would be untimely, considering that the EEOC's dismissal was in July of 2001, the Plaintiff's present Complaint does not contain any allegations pertaining to the Defendant's decision to place him medical leave. Thus, the allegations contained in the Plaintiff's present Complaint cannot reasonably be read to fall within the scope of the ADA Charge that was submitted by the Plaintiff. The Charge does satisfy us that the Plaintiff knew how to allege an ADA claim when he felt that such a claim was warranted.

- 17 -

upon the conclusion that "[a]ge and race are distinct protected categories and the exhaustion of remedies with regard to one does not create a right to sue for the other."), aff'd, 408 F.3d 470 (8th Cir. 2005); Barnes-Griswold v. St. Paul Public Schools, 2005 WL 1261749 at *6 (D. Minn., May 24, 2005)(dismissing ADEA claim where the plaintiff's EEOC charge only asserted claims of race and disability discrimination and the plaintiff failed to assert facts "that would support a finding that an ADEA claim is reasonably related to her claims of race and disability discrimination."); see also, Russell v. T.G. Missouri Corp., 340 F.3d 735, 748 (8th Cir. 2003)(ADA retaliation claim did not grow out of an EEOC charge where the ADA discrimination charge failed to provide notice of ADA retaliation claim). Therefore, the Plaintiff has failed to exhaust his administrative remedies under the ADA, and that aspect of his Complaint should be dismissed.[7]

---

[7]It is also apparent that, even affording the Plaintiff's Complaint a liberal construction, he has failed to state any viable claim under the ADA. While the Plaintiff has alleged that he was awarded disability benefits under the Social Security Act, Complaint, p. 9, at ¶7, he has failed to allege any conduct which could be interpreted as discrimination, on the basis of such a disability. Specifically, the Plaintiff does not allege that he was denied benefits, under the Defendant's disability pension plan, because of any actual or perceived disability, but instead, he alleges that he was denied benefits because of his age. Accordingly, while the Plaintiff's failure to exhaust his administrative remedies is sufficient grounds for dismissal, we also find that the Plaintiff has failed to allege a viable claim under the ADA.

c.   The MHRA.   The Complaint does not specifically allege any violations of the MHRA.   However, the Plaintiff does allege that he filed an administrative Charge with the MDHR, which appears to be based on claimed violations of the MHRA.   See, Complaint, at p. 2; Pethybridge Aff., at Exh. 1. Moreover, the Plaintiff's factual allegations are in the nature of age discrimination, which is a type of discrimination that is also prohibited by the MHRA.   See, Minnesota Statutes Section 363A.08, Subdivision 2(c); see also, Ace Electrical Contractors, Inc. v. International Brotherhood of Electrical Workers, Local 292, 414 F.3d 896, 900-901 (8th Cir. 2005).   Accordingly, since it is the well-pleaded facts, and not legal theories or conclusions, that must be considered in determining the adequacy of a party's pleading, see, Parkhill v. Minnesota Mutual Life Ins. Co., 286 F.3d 1051, 1057-58 (8th Cir. 2002), and since a pro se pleading must be construed liberally, we consider the viability of the Plaintiff's age discrimination claim under the MHRA.   Nonetheless, we conclude that any action that the Plaintiff might have had, under the MHRA, as a result of the Defendant's alleged failure to provide him with benefits under its Plan, is time-barred.

"When considering state law claims, federal courts are required to apply state statutes of limitations."   Neben v. Thrivent Financial for Lutherans, 2004 WL 251838

at *3 (D. Minn., February 9, 2004), quoting <u>Settle v. Flucker</u>, 978 F.2d 1063, 1064 (8th

Cir. 1992), citing, in turn, <u>White v. Murphy</u>, 789 F.2d 614, 615 (8th Cir. 1985).  Under

the MHRA, a person who files an administrative Charge of discrimination, has forty-

five (45) days, from his receipt of MDHR's notice of the dismissal of the Charge, in

which to commence a civil action.   See <u>Minnesota Statutes Section 363A.33,</u>

<u>Subdivision 1</u>; <u>Anderson v. Unisys Corp.</u>, 47 F.3d 302, 305 n. 5 (8th Cir. 1995)("The

state statute of limitations for age discrimination claims is 45 days after receipt of a

right to sue letter from the MDHR."); <u>McKenzie v. Lunds, Inc.</u>, supra at 1002

[citations omitted].  Here, the Plaintiff's Complaint alleges that the MDHR decided not

to pursue his claim on October 18, 2004,[8] while a notice of dismissal on the EEOC

Charge was transmitted on or about January 13, 2005, and received by the Plaintiff on

January 18, 2005.  <u>Complaint</u> at p. 4-5.  The Plaintiff's suit was not filed until April 13,

---

[8]While a "right to sue" letter from the MHRA was not attached to the Plaintiff's
Complaint, the Complaint alleges that the MHRA decided not to pursue his claim on
October 18, 2005, and there are no allegations that the MHRA failed to provide him
with proper notice of its dismissal of his Charge.

- 20 -

2005,[9] which was well after the expiration of the forty-five (45) day period of limitations.

However, the forty-five (45) day limitation, which is set forth in the MHRA, is not jurisdictional, but rather, is subject to equitable doctrines such as waiver, estoppel, and tolling. Devin v. Schwan's Home Services, Inc., 2005 WL 132919 at *7 (D. Minn., May 20, 2005), citing National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 121 (2002); Ochs v. Streater, Inc., 568 N.W.2d 858, 860 (Minn. App. 1997); Jones v. Consolidated Freightways Corp., 364 N.W.2d 426, 429 (Minn. App. 1985). "Waiver [occurs] when the defendant voluntarily relinquishes or abandons the right to the defense based on the running of the statute of limitations," while "[e]quitable estoppel is when the defendant 'affirmatively and actively takes action that causes the [plaintiff] not to timely file her suit.'" Id., quoting Henderson v. Ford Motor Co., 403

---

[9]Minnesota case law has held that a civil action is not "brought" for purposes of the limitation period, until the Defendant has been served with process, in a manner that satisfies the requirements of Rule 3.01, Minnesota Rules of Civil Procedure. See, Ochs v. Streater, Inc., 568 N.W.2d 858, 860 (Minn. App. 1997). Since this is a State law claim, the Federal Courts apply the State's commencement rule -- service of process commences the lawsuit. See, Larsen v. Mayo Medical Center, 218 F.3d 863, 867 (8th Cir. 2000), cert. denied, 531 U.S. 1036 (2000). The Record establishes that the Defendant was served with process on April 14, 2005, see Pethybridge Affidavit of April 28, 2005, Docket No. 1, p. 16 of 23, which is after the expiration of the applicable limitation period.

F.3d 1026, 1033 (8th Cir. 2005).   The Plaintiff has not requested the application of either of these doctrines and, based upon the allegations contained in the Plaintiff's Complaint, neither doctrine excuses the untimeliness of the Plaintiff's Complaint.

In determining whether to toll a statute of limitations, a Court should consider both the conduct of the plaintiff, and any prejudice to the defendant.  Ochs v. Streater, Inc., supra at 680.  However, "[a]s a general rule, equitable tolling is reserved for circumstances that are 'truly beyond the control of the plaintiff,'" Shempert v. Harwick Chemical Corp., 151 F.3d 793, 797-98 (8th Cir. 1998), cert. denied 525 U.S. 1139 (1999), quoting Hill v. John Chezik Imports, 869 F.2d 1122, 1124 (8th Cir. 1989), and a plaintiff's "innocent inadvertence is not sufficient to toll the statute." Jones v. Consolidated Freightways Corp., supra at 429.

Here, the Plaintiff has not identified any circumstance that would have prevented him from filing his action within the statutory time period, nor is any circumstance readily apparent in this Record.  Accordingly, we decline, for want of a basis to do so, to toll the pertinent statute of limitations.  See, Ochs v. Streater, Inc., supra at 680(declining to toll statute of limitations where the plaintiff "offered no evidence that circumstances beyond his control prohibited him from serving his complaint within the statutory period."); see also, Breen v. Northwest Bank, Minnesota, N.A., 865 F. Supp.

574, 580 (D. Minn. 1994)(a claim under the MHRA was untimely where the plaintiff

"offer[ed] no explanation for her late filing."); see also, <u>Baldwin County Welcome</u>

<u>Center v. Brown</u>, 466 U.S. 147, 152 (1984)(noting that, "[i]n the long run, experience

teaches that strict adherence to the procedural requirements specified by the legislature

is the best guarantee of even-handed administration of the law," in declining to toll a

statute of limitations), quoting <u>Mahasco Corp. v. Silver</u>, 447 U.S. 807, 826 (1980).

Accordingly, the Plaintiff's MHRA age discrimination claim, to the extent that one is

alleged, is time-barred.

Therefore, finding that the Plaintiff's Complaint fails to state a claim under the

ADEA, that the Plaintiff failed to exhaust his administrative remedies with respect to

his ADA claim, and that any age discrimination claim against the Defendant, under the

MHRA is time-barred, we recommend that the Defendant's Motion to Dismiss be

granted, and that the Plaintiff's Complaint be dismissed.

NOW, THEREFORE, It is –

RECOMMENDED:

1.      That the Defendant's informal Motion to Appoint Counsel [Docket No.

15] be denied.

2.      That the Defendant's Motion to Dismiss [Docket No. 2] be granted.

Dated:  November 4, 2005          s/Raymond L. Erickson

                                  Raymond L. Erickson
                                  CHIEF U.S. MAGISTRATE JUDGE


## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and

D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than**

**November 22, 2005,** a writing which specifically identifies those portions of the

Report to which objections are made and the bases of those objections.  Failure to

comply with this procedure shall operate as a forfeiture of the objecting party's right

to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a

Hearing, then the party making the objections shall timely order and file a complete

transcript of that Hearing **by no later than November 22, 2005,** unless all interested

parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to

review the transcript in order to resolve all of the objections made.